# Woods *versus* Peoples' National Bank of Pittsburgh.

1. A mortgage given to a National bank to secure a future loan is *ultra vires* and therefore void.

2. A mortgage given to a National bank to secure a pre-existing debt is valid.

3. Where a mortgage was given to a National bank partly to secure certain pre-existing notes, upon which W. was an accommodation endorser, and partly to secure a future loan, *Held*, that the mortgage was void as to the future loan, and that W. had a right to have the proceeds of a sale of the mortgaged premises under the mortgage applied to the payment of the notes of which he was endorser.

November 8th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1876, No. 239.

Assumpsit against Robert Woods as endorser of three promissory notes.

In 1869 and 1870 Robert Woods, the defendant below, endorsed three accommodation notes of R. L. McAboy, to the amount of $7000, which notes were discounted by the Peoples' National Bank of Pittsburgh, the plaintiff below. In March 1870, the bank loaned McAboy $5055 upon his own note unendorsed. On September 1st 1870, the wife of McAboy executed a mortgage to the bank for $20,000 to secure the above notes and to secure an additional loan to McAboy of $8000, which latter was made to him September 8th 1870, McAboy giving the bank two notes for $4000 each. The notes endorsed by Woods were subsequently renewed. Afterwards, upon default in payment of the various notes, the bank brought suit upon its mortgage and recovered $13,564.82 upon it, and then brought this action against Woods upon the notes endorsed by him. Upon these facts the court below (Stowe, A. J.) instructed the jury to find for the plaintiff, which they did in the sum of $9228.94. After judgment the defendant below took this writ of error, assigning for error the charge of the court and the refusal of evidence of an admission made by the president of the bank tending to show the *purpose* for which the mortgage in question was given to it.

*Hampton & Dalzell*, for the plaintiff in error.—So far as the mortgage was intended to secure the loan of $8000 it was void: Fowler *v.* Scully, 22 P. F. Smith 456; no part of the proceeds can be applied to that loan, as that would be a fraud upon the National Bank Act and on Woods.

*M. W. Acheson* and *W. L. Chalfant*, for the defendant in

error.—Even if the mortgage was void that constitutes no defence to Woods. In Fowler *v.* Scully, the mortgage showed on its face that it was to secure future advances; not so here. Therefore, McAboy himself could not have been heard to impeach it.

Again, McAboy made no defence to the suit on the mortgage, and the judgment therein cannot be impeached collaterally : Verner *v.* Carson, 16 P. F. Smith 440.

The mortgage was not given for Woods's benefit, but to secure the bank and primarily the $8000. How can Woods be allowed to deprive the bank of its security and defeat the intentions of the party to the mortgage ? Besides, Woods has no equity of subrogation till the bank is paid: Brough's Estate, 21 P. F. Smith 460 ; Kyner *v.* Kyner, 6 Watts 221 ; Bank *v.* Potius, 10 Id. 148.

The bank could not refuse to appropriate the proceeds of the mortgage to the $8000 loan on the ground that the mortgage *pro tanto* exceeded the corporate powers : Parish *v.* Wheeler, 22 N. Y. 494.

The declaration of the president was not part of the *res gestæ*, and besides was made two years after the transaction ; it was inadmissible: Pennsylvania Railroad Co. *v.* P. & R. Railroad Co., 21 P. F. Smith 350.

Mr. Justice PAXSON delivered the opinion of the court, November 20th 1876.

It was held in Fowler *v.* Scully, 22 P. F. Smith 456, that the loaning of money by a national bank upon mortgage or other real estate security is *ultra vires*, and forbidden by the Act of Congress. This of course does not apply to the case where a bank has in good faith taken a mortgage by way of security for a previously existing debt. Such case comes within one of the express exceptions of the Act of Congress. It follows, therefore, that in so far as the mortgage of Mrs. McAboy to the Peoples' National Bank of Pittsburgh was given to secure money thereafter to be loaned to her husband, it was *ultra vires*. It is manifest from the evidence that the loan of $8000 to Mr. McAboy on or about the 8th of September 1870, was upon the faith of the mortgage. As to this loan the mortgage was not a valid security. But it was good as to the indebtedness of Mr. McAboy to the bank existing prior to its execution, amounting to about $12,055. For $7000 of this sum the bank held the endorsements of the plaintiff in error. His contention is that the bank was bound to apply the money received from a sheriff's sale of the mortgaged premises to the notes held by it at the time the mortgage was given. In this we think he is right. As the endorser of Mr. McAboy's notes, held by the bank, he had a right to call upon the latter to apply the money to the payment of the notes for which alone the mortgage was legally held as security. The mortgage was as much for his benefit as for the

bank. The latter ha no right to apply the proceeds thereof to the two unsecured notes of $4000 each. Under the authority of Fowler v. Scully, supra, Mr. McAboy could have objected to such appropriation. Whatever he might have done in this respect, the plaintiff in error as his endorser may do also.

From what has been said it will be seen that both the assignments of error are sustained. The judgment is reversed, and a venire facias de novo awarded.